IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORMAN BEAMER,                                Civil No. 04-6263-HO

        Plaintiff,                        ORDER

    v.

JOHN POTTER, Postmaster General,

        Defendant.

The court entered partial judgment dismissing plaintiff's second claim, and ordered dismissal of count II of the first claim for relief, plaintiff's retaliation claim. See Partial Judgment dated March 21, 2005; Order dated February 15, 2005 at 8-9. Count one of the first claim for relief alleging sex discrimination in the terms, privileges and conditions of employment in violation of Title VII, remains for adjudication. Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies, fails to state a claim upon which relief can be granted, and did not

suffer an actionable adverse employment action as a matter of law. Because plaintiff failed to timely exhaust administrative remedies, and because plaintiff presented insufficient evidence to warrant tolling the limitations period or to prove discriminatory motive or an actionable change in the terms, privileges or conditions of employment, defendant is entitled to summary judgment dismissing plaintiff's remaining Title VII claim.

## Undisputed Facts

Except where noted, the following facts are undisputed for purposes of resolving defendant's motion for summary judgement. The United States Postal Service employed plaintiff as a clerk/carrier, mail handler and custodian from 1978 until August 1, 2004, the effective date of plaintiff's early retirement. During 2003 and until retirement, plaintiff was a custodian at the Southside Post Office in Eugene, Oregon. Dan Ehlers was plaintiff's immediate supervisor. Ehlers's office was located in Springfield, Oregon. Paul Bastinelli was the Postmaster at the Southside Post Office.

Megan Colby worked as a letter carrier based at the Southside Post Office. On June 6, 2003, Colby complained about comments plaintiff made to her concerning how she looked in her hat. Tom Gates, Colby's union representative and long-time friend, advised plaintiff against contact with Colby.

2 - ORDER

On July 10, 2003, Colby complained again regarding plaintiff's conduct. Plaintiff denies inappropriate conduct with Colby, but acknowledges he may have had some contact with her on that date. Postal Service investigators were notified on July 11, 2003, and commenced an investigation on July 14, 2003. The investigators issued findings dated July 24, 2003. Def's Ex. 4. Investigators interviewed plaintiff and Colby during the investigation.

Plaintiff was reassigned to the main post office on Willamette Street in downtown, Eugene, on July 11, 2003. Plaintiff lost no work hours, income, or retirement benefits. While at the main post office, plaintiff's start time was changed from 7:30AM to 11:00AM, and plaintiff contends that the main building is older, and not maintained as well as the Southside Post Office. After three weeks at the main office, plaintiff took three weeks sick leave.

Postal Service managers interviewed plaintiff and Colby again on August 13, 2003. Colby alleged plaintiff engaged in inappropriate conduct, which plaintiff denied. By letter dated August 21, 2003, managers advised Colby that the results of the sexual harassment investigation were inconclusive, and that she should not have contact with plaintiff. Def's Ex. 9. Plaintiff was transferred back to the Southside Post Office and told not to have contact with Colby, not to work in the area where letter

3 - ORDER

carriers worked until 11:00 AM, and that his daily start and end times would be fifteen minutes later.

Bastinelli testified in deposition that plaintiff's schedule was adjusted to avoid contact with Colby, and plaintiff's schedule (rather than Colby's schedule) was adjusted because Colby was the complaining party. Pl's Ex. 4 at 53:19-20, 65:18-19. When asked to further clarify his answer, Bastinelli stated that Colby was not moved because she had a variable start time, a specific work area, and generally worked at the station until 11:00AM in order to get the mail out to the street. Id. at 67:6-19.

During the investigation, Bastinelli removed stickers and other material from custodian carts used by plaintiff and John Huffman. Some employees were required to remove the same type of materials from other work areas. Plaintiff's materials were returned to him.

Plaintiff participated in a "job huddle" concerning sexual harassment policy on April 4, 2003. Def's Ex. 29. The parties dispute whether the location of an Equal Employment Opportunity Commission (EEOC) poster was covered in the job huddle. Investigators asked plaintiff if he saw the Postmaster General policy statement on sexual harassment. He replied, "Yeah probably I don't remember seeing this particular thing before. I know sexual harassment is against the rule." Plaintiff reviewed

the policy statement and received a copy. The statement provides in part,

> In addition, an employee can seek relief through the EEO complaint process, grievance, arbitration procedure established through the bargaining agreement with the union and the unbinding grievance procedure described in Section [___][1] of the Employee Labor Manual. Employees pursuing an EEO complaint must contact an EEO Counselor within 45 days of the acts giving rise to the claim in order to preserve the right under law.

Plaintiff received individual EEO training on August 21 or 23, 2003.[2] Plaintiff acknowledged receiving training on USPS Policy PB220969.

Plaintiff saw a physician on December 3, 2003. He told the physician he was seeking an attorney.

Plaintiff's attorney faxed an EEO complaint to USPS on February 9, 2004. USPS sent a return email the same day setting forth the requirements for filing a complaint. A request for informal pre-complaint counseling was filed on February 12, 2004. This filing set forth August 21, 2003 as a date of an alleged discriminatory act. On May 11, 2004, the EEO Office issued a decision dismissing plaintiff's complaint for failure to contact an EEO counselor within the prescribed time or credibly advance extenuating circumstances. Def's Ex. 43.

---

[1] Unintelligible on court copy.

[2] Defendant contends the training occurred on August 21, 2003. Plaintiff contends it occurred on August 23, 2003. There is no material difference.

5 - ORDER

Colby transferred out of the Southside Station in July, 2004. At his request, plaintiff's time and location restrictions were lifted at that time.

After the investigation, plaintiff filed union grievances against the transfer, change in report time, location restriction before 11:00AM, and removal of materials from his cart. Plaintiff grieved these issues through step four of the grievance process, and was not informed that arbitration was available.

Supervisor Ehlers and co-worker Hoffman never saw or heard plaintiff engage in behavior that may be interpreted as sexual harassment. Postal Service investigators did not interview Ehlers and Hoffman during their investigation.

Colby made other complaints of sexual harassment against co-workers at the Southside Station.

Believing he suffered discrimination, plaintiff contacted EEO counselor Eugenia Parker in August, 1993. Parker told him that the EEO was created primarily for women and minorities, and that it could not help him. Based on Parker's representation, plaintiff believed in August, 2003, that union procedures were his only recourse for what he believed were discriminatory acts against him. His attorney told him in February, 2004, that he should file an EEO complaint. Thereafter, he did so as quickly as possible, and followed the EEO process until his complaint was dismissed. This included attending mediation. Prior to meeting

with his attorney, plaintiff was unaware there was a 45-day deadline to speak to an EEO counselor.

## Discussion

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### I. Exhaustion of Administrative Remedies

Defendant first argues that the remaining claim should be dismissed because plaintiff waited 175 days after the alleged discriminatory act to contact an EEO counsel, well-beyond the expiration of the 45-day period required by 29 C.F.R. § 1614.105(a)(1). Failure to exhaust administrative remedies is fatal to a Title VII claim absent waiver, estoppel or equitable tolling. Sommatino v. United States, 255 F.3d 704, 708-09 (9th Cir. 2001).

Plaintiff concedes that he was tardy in contacting the EEO counselor, but argues that the 45-day period should be equitably tolled. He cites his reliance on Parker's 1993 advice that Title VII could not help him, lack of evidence definitively proving that defendant maintained a poster in the workplace advising plaintiff of the 45-day requirement, and his complete compliance with required procedures after finally contacting the EEO counselor.

On this record, plaintiff is not entitled to the benefit of equitable tolling. It is undisputed that plaintiff received a copy of the USPS policy on sexual harassment on or about August 21, 2003. This document advises employees of the requirement to contact a counselor within 45-days. Plaintiff offers no evidence that EEOC materials were not displayed in his workplace. He simply points out that defendant cannot prove to a certainty that they were displayed. He testified that he didn't know whether the poster was displayed. Because plaintiff underwent training on sexual harassment and received a copy of the sexual harassment policy, his reliance on ten-year old advice from Parker is unreasonable. Plaintiff did not exercise due diligence. His failure to contact an EEO counselor within 45 days is not excused.

## II. Merits

Even if the 45-day limitations period for contacting an EEO counselor is tolled, defendant is nevertheless entitled to judgment as a matter of law. The temporary change in plaintiff's work location and schedule, and the permanent alteration by fifteen minutes to plaintiff's start and end time and permanent prohibition on work in the letter carrier area before 11:00AM do not amount to material alterations to the conditions, privileges and terms of plaintiff's employment. Cf. Chuang v. University of California-Davis Bd. of Trustees, 225 F.3d 1115, 1126 (9th Cir.

8 - ORDER

2000) (forcible relocation of professors' laboratory by university administration into inadequate facilities for ongoing experiments disrupted experiments, causing delay in receipt of grants and departure of employees, and thus constituted material adverse change in terms and conditions of professors' employment).

After notice, an employer has a duty to take prompt action reasonably calculated to end harassment. Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001). Depending on the circumstances, this duty may require the employer to take temporary action while it determines whether a complaint is justified, and permanent remedial measures. Id. So long as it acts reasonably, an employer is not prohibited from separating employees, even where it determines after investigation that a complaint of harassment is not sustained. Id. at 1194. The employer has wide discretion in choosing how to minimize contact between employees, and may properly consider the relative ease of moving them and their respective importance. Id. Bastinelli testified that plaintiff was transferred and Colby was not because Colby complained about plaintiff, and because it was more convenient to transfer plaintiff and adjust his schedule given the requirements of their respective jobs.

Assuming for argument that plaintiff's evidence suffices to support a prima facie case of sex discrimination, defendant

9 - ORDER

advanced, and Bastinelli's aforementioned testimony evinces, a legitimate reason for temporarily reassigning plaintiff, permanently altering his start and end times by fifteen minutes and prohibiting him from working in the letter carrier area before 11:00AM. The temporary alterations in plaintiff's work location and schedule occurred almost immediately after Colby's July 10, 2003 complaint. The fifteen minute alteration in plaintiff's start and end time and the prohibition on work in the letter carrier area prior to 11:00AM occurred shortly after the completion of the investigation into Colby's complaint. A reasonable juror could not conclude based on all the evidence that plaintiff's sex was a motivating factor for defendant's actions concerning plaintiff.

## Conclusion

Based on the foregoing, defendant's motion for summary judgment [#53] is granted. This case is dismissed.

IT IS SO ORDERED.

DATED this 13th day of December, 2005.

Michael R. Hogan
United States District Judge